WESTERN UNION TELEGRAPH COMPANY *v.* BURLINGTON TRACTION
COMPANY.

May Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS and TAYLOR, JJ.

Opinion filed October 30, 1916.

*Judicial Notice—Public Service Commission—Findings of Fact
—Jurisdiction—Public Service Corporations—Burden of
Showing Intention of Legislature to Take Away Rights of
Others—Restrictions on Use of Property—High Tension
Lines—Regulation—Confiscation—Taking Property With-
out Due Process of Law—5th and 14th Amendments to
Federal Constitution—Authority of Public Service Commis-
sion—Reasonableness of Exercise of Authority.*

Judicial notice will not be taken of the provisions of the charter of a
    private corporation.
The findings of the Public Service Commission, that two certain cor-
    porations are subject to the supervision of the Commission under
    No. 116, Acts of 1908, and that the lines of electric wires of such
    corporations are used by them in the service of the public in and
    about the business carried on by them in the State, unexcepted
    to, are determinations of mixed questions of law and fact and
    are conclusive as showing that the corporations are public service
    companies, carrying on business in this State.
The Public Service Commission has jurisdiction under Sec. 9, of No.
    116, Acts of 1908, to hear and determine the petition of a telegraph
    company, alleging that the high tension line of electric wires of
    another company had been erected in dangerous proximity to the
    previously constructed line of the telegraph company, and praying
    for an order for the separation of the two lines.
If a public service corporation seeks to base a claim of right to con-
    struct and maintain a high tension electric line in a certain
    location upon the intention of the legislature, in granting its
    charter, to take away the private rights of individuals or of an-
    other public service corporation, the burden is upon it to show
    that by express words, or by necessary implication, such an in-
    tention appears.
Private ownership of a right of way by a public service corporation

does not give such corporation the right to erect a high tension electric wire line thereon, without regarding the rule of law restricting every man against using his property to the prejudice of others.

Where the facts reported by the Public Service Commission showed that the petitionee's high tension line, by reason of its proximity to the petitioner's prior constructed parallel telegraph line, was highly dangerous to the public safety, in that it constantly endangered the lives and persons of petitioner's linemen, and the lives and persons of all those using instruments and apparatus connected with the telegraph wire, and, consequently, that the high tension line was a public nuisance; the Public Service Commission had the constitutional power of regulation in the interest of the public, and if this power was not exercised by it in such a manner as to cause it to be within the rule that the substance and not the shadow determines the validity of the power, an order directing the petitionee to separate the high tension lines from the telegraph line, to a minimum distance of 30 feet, or, as an alternative, cease from transmitting electric current over its wires, was not confiscatory, and did not deprive the petitionee of its property without due process of law, within the 5th, and 14th Amendments of the Federal Constitution.

The findings of the Public Service Commission, have the force and effect of reports of special masters in courts of equity, when the cause is in Supreme Court on appeal, and are conclusive.

The Public Service Commission having determined the necessity for the elimination of the danger caused by the erection of petitionee's high tension line in close proximity to petitioner's telegraph line, it was within the province of the commission to determine the manner in which this could best be accomplished with a view to the operation of the lines and the public safety.

*Held*, the record in this case affords no basis for the contention that the order of the Public Service Commission was an unreasonable exercise of authority.

APPEAL from an order of the Public Service Commission. Chittenden County.

STATEMENT BY WATSON, J. This case comes before the Supreme Court by appeal from the order of the Public Service Commission. The petition was brought by the Western Union

Telegraph Company against the Vergennes Power Company; but the report of the commission states that at the outset of the first hearing, it was stated that the Burlington Traction Company was practically the party in interest instead of the Vergennes Power Company, the Burlington Traction Company being the real owner of whatever there was to the Vergennes Power Company; that it was thereupon agreed by all the parties that the Burlington Traction Company should be substituted as petitionee for the Vergennes Power Company, whereupon the Burlington Traction Company entered as petitionee in the matter · and appeared by counsel; and that the latter company is thereafter in the report designated as the petitionee. It is so designated in the opinion of the court.

The commission reports the following facts: It was conceded by both parties that the petitioner's lines were erected before the high tension line of the petitionee was erected, and that there has been no change in the petitioner's lines since the high tension line of the petitionee was erected. Both parties to this proceeding are corporations subject to the supervision of the commission under No. 116 of the Acts of 1908, and the lines of said parties which are described and designated in the report and order are used by them in service to the public and about the business carried on by them in this State.

In presenting its case, the petitioner arbitrarily divided that part of petitionee's high tension line against which it petitioned into twenty-one sections. Sections 19-21 were not urged at the hearing, and are not in question. The first section begins at a point about 2,000 feet north of Ferrisburgh station; thence the first eighteen sections which are consecutive, extend northerly along the west side of the right of way of the Rutland Railroad Company and parallel thereto, ending at a point about one and one-half miles south of Shelburne station at which the high tension line and the right of way diverge.

The petitioner, on February 23, 1910, and before the petitionee had taken any steps looking to the construction of its high tension line or the acquisition of any real estate or rights incident thereto, entered into a written contract with the Rutland Railroad Company, by the terms of which it acquired the right to maintain its poles and wires at the places within the railroad right of way and in the manner set forth in the report for a period of twenty-five years from January 1, 1910. This

contract also gave the railroad company the right to use certain of the petitioner's wires. The petitioner's poles and wires had been located at these places specified in the contract for a considerable period prior to the execution thereof. The petitionee erected its high tension line sometime subsequent to the month of April in the year 1912, and upon a private right of way which it purchased. This high tension line, consisting of three solid copper wires, one of which is located on top of the poles, and the others on the ends of the cross-arms, constantly carries a voltage of 22,000. The poles are placed one hundred thirty feet apart. There was no evidence tending to show that the petitionee had any other right of way than the one which its high tension line now occupies.

The petitioner has two lines of poles and wires, located wholly within the limits of the railroad right of way, which extend from a point opposite to the beginning of section 1 of the high tension line to the point opposite the end of section 18 thereof, a distance of a little less than eleven miles. One of these lines is on the east and the other on the west side of the single railroad track. The line west of the track is parallel with the high tension line for the whole of this distance and is constructed with twenty-five foot class B and C cedar poles, each carrying two cross-arms. The lower arms carry three wires on the west of the poles and two on the east side of the poles. The two outside wires on the west of the poles are a telephone circuit used by the railroad company in its general business. The wire on the west which is nearest the poles is a railroad telegraph wire for general messages. The wire on the east of and nearer the poles is a telegraph wire used jointly by the petitioner for commercial business, and by the railroad for general messages. The outside wire on the east of the poles is a commercial wire of the petitioner. The upper cross-arms carry two wires on each side of the poles. The two wires on the west of the poles are commercial telegraph wires. The wire nearer the poles on the east is a lease wire of the petitioner, and the outside wire is used by the railroad company in telegraphic train dispatching between Bellows Falls and Burlington.

The petitioner's line has been in place for a number of years and the majority of the poles need renewal, but in many instances the poles could be cut off and reset, and then have a considerable period of usefulness. But if the line of the peti-

tioner were in proper condition, the hazards set forth in the report would not be materially reduced. The report shows the location of the eighteen sections (in question) of the high tension line, the average distance at each of these sections between the centers of the petitionee's high tension pole-line and the petitioner's pole-line adjacent thereto, and the average clearance at each of the sections between the wires of the two proximate lines.

The high tension line, when considered without reference to proximity or parallelism with any other line, might be regarded as fairly well constructed for the purpose for which it is used. But the proximity which exists between sections 1 and 18 inclusive of said line, and the petitioner's line west of the railroad track which is parallel, creates danger which is in no wise justifiable from the standpoint of public safety. The wooden poles of the high tension line, under abnormal stress of weather and particularly in the spring when the ground is thawing, are likely to blow over, which would almost inevitably bring about a contact between the wires of the two lines. Porcelain insulators, the type used in the high tension line, will puncture occasionally under stress of electrical service and a breakage of the insulators often results therefrom. This is sometimes followed by a break and recoil of the wire which, being under considerable tension may be whipped laterally to a considerable distance, probably resulting, the present conditions existing, in a contact between the high tension and the telegraph wires. The pins holding the insulators of the high tension line are of wood, and a punctured insulator would probably result in the destruction of the pin and a liberation of the wire, with a resultant contact between the lines. At points where the two lines are closest, the line clearance in some instances is not over twenty-five inches, and if a wire in either line becomes there disconnected, an ordinary swing of the disconnected wire would result in contact between the two lines. At these last mentioned points, it is extremely hazardous for linemen to work on the ends of the petitioner's cross-arms nearest the high tension line. All the hazards mentioned are intensified by the use of wooden pins in the high tension line. Such pins tend gradually to disintegrate when used in connection with voltage of an intensity as high as 22,000. The lack of storm and head guying and of

sufficient side guying, and the use of solid instead of stranded wire in the electric line, also go to intensify the danger created by the proximity of the two lines.  Contact between wires of the two lines would produce an instantaneous electrification by a current of at least 16,000 volts of the petitioner's wire and every instrument and piece of apparatus connected therewith at every point on the wire, with the attendant probability of injury or death to persons using said instruments or apparatus.

The findings in conclusion are, that the maintenance and operation of the aforesaid eighteen sections of the petitionee's high tension line with a voltage of 22,000 at the proximity which exists between the same and the petitioner's telegraph line adjacent thereto, constitutes an ever present public danger which should be eliminated; and that a separation of the line of poles carrying the first eighteen sections of the high tension line and the petitioner's line of poles parallel thereto and west of the railroad track to a minimum distance of thirty feet would eliminate the danger above described in the most reasonable and feasible manner, if both lines are to be continued in operation.

The order of the commission, dated February 17, 1916, is as follows: "Upon the facts found as above set forth, it is ordered that the Burlington Traction Company shall, before the first day of July, 1916, separate the line of poles of the eighteen sections of its high tension line above described to a minimum distance of thirty feet from the line of poles of the Western Union Telegraph Company parallel thereto on the west side of the railroad track or, as an alternative, cease from transmitting high tension current over said eighteen sections after said date until such separation is made."

On March 27, 1916, by order of a Justice of the Supreme Court upon the application of the petitionee, the foregoing order of the commission was stayed, and the time therein limited was extended to October 1, 1916, with leave to make further application for extension, if circumstances warrant.

An appeal was taken by the petitionee from the order made by the commission, and from the order overruling the petitionee's exceptions to the report.

*George W. Stone, A. G. Whittemore* and *Sherman R. Moulton* for the petitionee.

The order is beyond the jurisdiction of the Public Service Commission as conferred by Statute. It is not found that the petitionee is a company engaged in the manufacture, sale or distribution of electricity for lighting, heating, or power. It is not found that the petitionee used or occupied the highways. Sec. 3, No. 116, Acts of 1908.

The Public Service Commission has been held to be a body exercising special and limited statutory powers, not according to the course of the common law, as to which nothing will be presumed in favor of its jurisdiction, but the facts necessary to confer it must affirmatively appear. *Bessette* v. *Goddard,* 87 Vt. 77, 82; *Colonial Co.* v. *Creaser,* 87 Vt. 457; *Kent* v. *Enosburg,* 71 Vt. 255; *Blanchard* v. *Barre,* 77 Vt. 420.

The order is confiscatory and in effect the taking of the property of the petitionee without due process of law. If the petitionee is compelled to move its line of wires, it must acquire a new right of way, by purchase or condemnation, and abandon that one which it has obtained by purchase. *New Orleans Gas Light Company* v. *Drainage Commission,* 197 U. S. 453, 49 L. ed. 831; *Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 355, 52 L. ed. 828, 832.

The order, even though in form within the power delegated to the Commission, is such an unreasonable exercise of authority as to cause it to be within the rule that the substance, and not the shadow determines the validity of the exercise of the power. *Interstate Commerce Commission* v. *Illinois Central Railroad,* 215 U. S. 452, 54 L. ed. 280; *Interstate Commerce Commission* v. *Union Pacific Railroad,* 222 U. S. 541, 56 L. ed. 308; *Cumberland Tel. Co.* v. *United Electrical Ry. Co.,* 42 Fed. 273; *Keasbey on Electric Wires* (2 ed.) 239; *W. U. Tel. Co.* v. *Champion Elec. Light Co.,* 9 Ohio Dec. 540, 14 Wkly. Law Bull. 327.

*W. B. C. Stickney* for the petitioner.

The subject matter of the order is within the jurisdiction of the Public Service Commission. The erection of the petitionee's line so near the line of the petitioner, creates a dangerous situation, which, though not brought about by the petitionee, obliges the petitioner to remedy it. *Drown* v. *N. E. Tel. & Tel. Co.,* 80 Vt. 1, 14.

The petitionee's line was constructed after that of the petitioner. The petitionee was authorized to construct a line but not to place it wherever it might think proper without reference to the property and rights of others. *Baltimore & Potomac Railroad Co.* v. *Fifth Baptist Church,* 108 U. S. 317; *Northwestern Telephone Exchange Co.* v. *Twin City Telephone Co.,* 95 N. W. 460; *Edison Elec. Light & Power Co.* v. *Merchants' Mfgrs. Elec. Light & Power Co.,* 49 Atl. 766, 86 Am. St. Rep. 712; *Paris Elec. Light & Ry. Co.* v. *Southwestern Telephone & Telegraph Co.,* 127 S. W. 902; *Bell Telephone Co.* v. *Belville Elec. Light Co.,* 12 Ont. 571; *Rutland Electric Light Co.* v. *Marble City Light Co.,* 65 Vt. 377.

The action of the Commission is a proper exercise of the police power of the State. *Lawton* v. *Steele,* 152 U. S. 133, 38 L. ed. 385; *Barbier* v. *Connelly,* 113 U. S. 27, 28 L. ed. 923; *Hill* v. *Met. Asylum Dist. Mgrs.,* 6 App. Cas. 193, 16 Eng. Rul. Cas. 556; *Baltimore & Potomac Railroad Co.* v. *Fifth Baptist Church,* 108 U. S. 317; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.,* 103 N. Y. 10, 8 N. E. 537.

WATSON, J. It is contended by the petitionee that the order of the public service commission should be set aside for three reasons: (1) Because it is beyond the scope of the statutory authority delegated to the commission; (2) because it is beyond the constitutional powers of the commission; (3) because it is so unreasonable, that it comes "within the elementary rule that the substance, and not the shadow, determines the validity of the exercise of the power." No other question is within the appellant's brief.

I. By statute the findings of fact by the commission have the force and effect of the reports of special masters in courts of equity, whenever the cause is taken by appeal to this Court. And any party who feels himself aggrieved by the final order, judgment or decree of the commission is given the right of appeal for the correction of any errors excepted to in its proceedings, or in the form or substance of its orders, judgments and decrees, on the facts found and reported by the commission. P. S. 4598, 4599, as amended by Sec. 1, No. 116, Laws of 1908.

The report states that both parties to this proceeding are corporations subject to the supervision of the commission under No. 116 of the Acts of 1908, and the lines of said parties, which

are described and designated in the report and order, are used by them in service to the public in and about the business carried on by them in this State.   No exception was taken to either of these findings. .Each of these corporations, though private in character, is upon the findings a public service corporation carrying on business in this State.   Neither the charter of the petitionee, nor any part of it, is before us, and notice of the provisions thereof will not be judicially taken.   *Briggs* v. *Whipple,* 7 Vt. 15; *Village of Winooski* v. *Gokey,* 49 Vt. 282. In these circumstances we think the above findings are the determinations of mixed questions of law and fact, and are conclusive as showing that the petitionee falls within the provisions of section three of the Act mentioned.

By section nine of that Act, the public service commission is given jurisdiction to render judgment and make orders and decrees in all matters provided for in the charter of any corporation owning or operating any plant, line or property subject to supervision under the Act, and is given like jurisdiction in all matters respecting: "III.   The manner of operating and conducting any business subject to supervision under this act, so as to be reasonable and expedient, and to promote the safety, convenience and accommodation of the public."   And "V. The sufficiency and maintenance of proper systems, plants, conduits, appliances, wires and exchanges, and when the public safety and welfare require the location of such wires or any portion thereof underground."   The provisions of these two clauses are sufficiently broad to confer jurisdiction upon the commission to hear and determine the matters here involved as shown by the record, and to render judgment, make orders and decrees therein.

II.   It is urged that the order made is in excess of the constitutional powers of the commission, in that it is confiscatory of the property of the petitionee, and is a taking of it without due process of law, in violation of the 5th and the 14th Amendments . of the Constitution of the United States.

The report shows that, by written contract entered into with the Rutland Railroad Company on February 23, 1910, and before the petitionee had taken any steps looking to the construction if its high tension line or the acquisition of any real estate or rights incident thereto, the petitioner acquired the right to maintain its telegraph poles and wires at the places within the

railroad right of way, and in the manner, stated in the report, for the period of twenty-five years from January 1, 1910; that the petitioner's poles and wires had been there located and erected for a considerable period prior to the execution of the contract; that the petitionee erected its high tension line sometime subsequent to the month of April in the year 1912, and upon its private right of way by purchase; and that since the last named line was erected, there has been no change in the petitioner's lines.

The report further shows that the high tension line, consisting of three solid copper wires, constantly carries a voltage of 22,000; that this line, when considered without reference to proximity or parallelism with any other line, might be regarded as fairly well constructed for the purpose for which it is used; that the proximity which exists between sections 1 to 18 inclusive of this line and the petitioner's parallel line west of the railroad track, creates danger which is in no wise justifiable from the standpoint of public safety; that at points where the two lines are closest, the line clearance is, in some instances, not over twenty-five inches, and if a wire in either line become there disconnected, an ordinary swing of the disconnected wire would result in contact between the two lines; that at these last mentioned points, it is extremely hazardous for linemen to work on the ends of the petitioner's cross-arms nearest the high tension line; that contact between wires of the two lines would produce an instantaneous electrification, by a current of at least 16,000 volts, of the petitioner's wire and every instrument and piece of apparatus connected therewith at every point on the wire, with the attendant probability of injury or death to persons using said instruments or apparatus; that the maintenance and operation of the aforementioned eighteen sections of the petitionee's line with a voltage of 22,000, at the proximity existing between the same and the petitioner's telegraph line adjacent thereto, constitutes an ever present public danger that should be eliminated; and that the separation of the line of poles carrying these eighteen sections of the high tension line, and the petitioner's line of poles parallel thereto and on the west side of the railroad track, to a minimum distance of thirty feet, would eliminate the danger in the most reasonable and feasible manner, if both lines are to be continued in operation.

No claim is made that by the provisions of the petitionee's charter the locating of its high tension line where it is in the sections in question, was mandatory or imperative; and the contrary must be assumed, for if the petitionee sought to base any claim upon the intention of the Legislature to take away the private rights of individuals or of another public service corporation, the burden was with the petitionee to show that by express words, or by necessary implication, such an intention appears. Per Lord Blackburn in *Metropolitan Asylum District Managers* v. *Hill,* 6 App. Cas. 193, 16 Eng. Rul. Cas. 556. See also *Rutland-Canadian R. Co.* v. *Central Vt. Ry. Co.,* 72 Vt. 128, 47 Atl. 399. Fixing the location of its line, acquiring the right of way therefor in that particular place, and erecting the line there, were discretionary acts of the company. Private ownership of the right of way did not give the company the right to erect its high tension line thereon without regarding the rule of law restricting every man against using his property to the prejudice of others. In *Clarendon* v. *Rutland Railroad Co.,* 75 Vt. 6, 52 Atl. 1057, this Court said: "It was not within the scope of legislative authority to grant to the company a right to construct and operate its road without regard to the rights of other persons and corporations. It is a settled principle that every holder of property, however absolute his title, holds it under the implied liability that his use of it shall not be injurious to the enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property is held subject to general regulations made by the Legislature, under its police power, for the common good and general welfare." In *Carty's Adm'r* v. *Winooski,* 78 Vt. 104, 62 Atl. 45, 2 L. R. A. (N. S.) 95, 6 Ann. Cas. 436, it is said that, "One of the powers of government inherent in every sovereignty is the governing and regulating of its internal police." And that, "It is a governmental function founded upon the duty of the state to protect the public safety, the public health, and the public morals." In *Nelson* v. *Vermont & Canada Ry. Co.,* 26 Vt. 717, 62 Am. Dec. 614, it was held that by general laws, the Legislature may require public service corporations to conform to such regulations of a police character, as they may deem for the security of the rights of citizens generally, and most conducive to quiet and good order, and the security of property, and even of animals. "And if the running of railroads, under

present restrictions, was found cruelly and recklessly destructive, even of the lives of domestic animals, it would be strange if the Legislature could not interfere, upon the general maxim, that every one shall be bound and required, *sic utere tuo ut alienum non laedas.*" In *Thorpe* v. *Rulland & B. R. Co.,* 27 Vt. 140, 62 Am. Dec. 625, it is said that the police power extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the State; and that according to the maxim given above, it must of course be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others. In *Board of Health* v. *St. Johnsbury,* 82 Vt. 276, 73 Atl. 581, 23 L. R. A. (N. S.) 766, 18 Ann. Cas. 496, the principle of this maxim is said to be "a universal and pervading obligation, and a condition on which all property is held, the application of which in the particular conditions must necessarily be within the reasonable discretion of the Legislature; and that when such discretion is exercised in a given case by means appropriate and reasonable, not oppressive nor discriminatory, it is not subject to constitutional objection." See also *State* v. *Morse,* 84 Vt. 387, 80 Atl. 189, 34 L. R. A. (N. S.) 190, Ann. Cas. 1913 B, 218.

In *Chicago, B. & Q. R. Co.* v. *Chicago,* 166 U. S. 226, 41 L. ed. 979, 17 Sup. Ct. 581, the court, through Mr. Justice Harlan, said: "The plaintiff in error took its charter subject to the power of the state to provide for the safety of the public, in so far as the safety of the lives and persons of the people were involved in the operation of the railroad. The company laid its tracks subject to the condition necessarily implied that their use could be so regulated by competent authority as to insure the public safety. And as all property, whether owned by private persons or by corporations, is held subject to the authority of the state to regulate its use in such manner as not to unnecessarily endanger the lives and the personal safety of the people, it is not a condition of the exercise of that authority that the state shall indemnify the owners of property for the damage or injury resulting from its exercise. Property thus damaged or injured is not, within the meaning of the Constitution, taken for public use, nor is the owner deprived of it without due process of law. The requirement that compensation be made for private property taken for public use imposes no restriction

upon the inherent power of the state by reasonable regulations to protect the lives and secure the safety of the people. In the recent case of *New York & N. E. R. Co.* v. *Bristol*, 151 U. S. 556, 38 L. ed. 269, 14 Sup. Ct. 437, this Court declared it to be thoroughly established that the inhibitions of the Constitution of the United States upon the impairment of the obligation of contracts, or the deprivation of property without due process or of the equal protection of the laws, by the states, are not violated by the legitimate exercise of legislative power in securing the public safety, health, and morals. 'The governmental power of self-protection' the court said 'cannot be contracted away, nor can the exercise of rights granted, nor the use of property, be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury.' '' The recent case of *Bacon* v. *Boston & Maine R. R.*, 83 Vt. 421, 76 Atl. 128, contains a lengthy discussion of the police power and its applicability in regulating public service corporations in the interest of the public. There the report of the public service commission showed that at the railroad station in White River Junction, a condition inconsistent with the safety of the travelling public existed, and that additional platform space was necessary to relieve the situation; and it appeared that some change of tracks was a necessary incident of providing such platform space as should be reasonably safe and free from discomfort. It was held that so far as the movement of the rails adjacent to the station was such necessary incident, the commission had power to order it; that moving back from the station, the railroad tracks, as safety required, was a legitimate exercise of the police power, was not a taking of property without compensation, did not constitute expropriation of property, nor impair any obligation of contract.

The facts reported show that the part of the petitionee's high tension line, here in question, at the short distance it is now located from the petitioner's parallel telegraph line west of the railroad track, is highly dangerous to the public safety, in that it constantly endangers the lives and persons of the petitioner's linemen at work in the place mentioned, and the lives and persons of all those who are anywhere using the instruments and apparatus connected with that telegraph wire, and consequently that said high tension line constitutes a public nuisance. In these circumstances, on the authorities cited, the

commission has the constitutional power of regulation in the interest of the public, and if this power was not exercised by it in such a manner as to cause it to be within the rule that the substance and not the shadow, determines the validity of the exercise of the power, the order made is not confiscatory and does not deprive the petitionee of its property without due process of law. *Interstate Commerce Com.* v. *Illinois Central R. Co.,* 215 U. S. 452, 54 L. ed. 280, 30 Sup. Ct. 155; *Interstate Commerce Com.* v. *Union Pacific R. Co.,* 222 U. S. 541, 56 L. ed. 308, 32 Sup. Ct. 108.

III. It is contended that the order, even though in form within the power delegated to the commission, is an unreasonable exercise of authority. This question must be determined upon the facts reported; for the findings of the commission, having the force and effect of reports of special masters in courts of equity, when the cause is in this Court on appeal, are conclusive.

When the petitionee constructed its high tension line, it had knowledge of the location of the petitioner's lines; and it will be taken to have had knowledge of the natural tendencies of electric energy in its transmission under high voltage, and of the inherent dangers attending it. In such circumstances it would be most inequitable and unjust to say that the petitionee could locate this line in disregard of the legal rights of the petitioner, thereby create a public nuisance of the nature hereinbefore described, and then, because of some repairs, (by way of more or fewer new poles,) needed in the latter's parallel line, that the nuisance should be abated and the dangers eliminated by the removal of the line of the innocent party, instead of by the removal of the line of the wrong-doer, as was ordered in this case. By the order made, the petitionee is required to separate its line of poles of the eighteen sections in question, to the minimum distance of thirty feet from the line of the poles of the petitioner on the west side of the railroad track, within the time limited, or thereafter to cease using its line for the transmission of high tension current until separation is made. Such separation is expressly found to be the most reasonable and feasible manner of eliminating the danger, if both lines are to be continued in operation. The commission having determined the necessity for such elimination, it was within the province of the commission to determine the manner in which this could best be accomplished with a view to the operation of the lines

and the public safety (*Sayers* v. *Montpelier & W. R. R. R.*, 90 Vt. 201, 97 Atl. 660); and the record affords no basis for the contention that the order is an unreasonable exercise of authority to that end.

> *Order of the Public Service Commission affirmed and cause remanded that the commission may fix a new time within which the order shall be complied with.*