H. J. M. JONES ET AL. *v.* MONTPELIER & BARRE LIGHT & POWER CO.

January Term, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed March 2, 1923.

*Electricity—Public Service Commission—Change of Rates by Public Service Corporation—Supreme Court Will Not Presume Legislature Intended to Ignore the Public in Prescribing Method for Changing Rates and Tolls—Jurisdiction of Public Service Commission Dependent Upon Notice.*

1. Where a public service corporation filed with the Public Service Commission, pursuant to G. L. 5066, schedules showing the rates and charges which it had established, and which were then in force, for electricity for power purposes, and also filed with the Commission a schedule of rates which were in addition to the existing rates and to become effective at a later date, and the proposed changes were protested by a petition of parties interested, which was disposed of by an order adverse to the power company, directing such rates to be discontinued, from which no appeal was taken, and concerning which no request for rehearing was made within the time allowed by law, a motion thereafter filed by the power company, although termed a motion for a rehearing and other relief, which asked the Commission to fix as just and reasonable the rates contained in a schedule attached thereto, can be treated only as a petition by the power company to have the Commission pass upon a schedule of proposed rates not previously filed with the Commission or made known to the public.

2. The initial step in fixing rates, tolls, etc., by the Public Service Commission is the filing of the schedule required by G. L. 5066 as amended by No. 129, Acts 1919, and the rate appearing in such schedule, when so filed, unless protested, becomes, by implication of law, the lawful rate which the producer may charge and which the consumer must pay, and continues to be the rate governing both producer and consumer until changed in the manner prescribed by statute, the rate, unless pro-

tested, becoming effective on the date specified in the schedule, if beyond the limit fixed by statute, or by the Commission, without action on the part of the Commission; and this is the only method provided in the statute for making such changes.

3. It will not be presumed that the Legislature intended to ignore the public in a matter of such vital importance to it as the fixing of rates, tolls, etc., of public utilities, which would be the effect if a statute were construed to mean that such rates and tolls could be established without the public having an opportunity to be heard.

4. The failure of the Legislature to make provision for notice to the public of proceedings instituted by a public service corporation for the purpose of fixing rates and tolls, without having previously filed with the Public Service Commission a schedule of proposed changes, shows that such proceedings were not intended by the Legislature, and that the Commission has no authority to entertain a proceeding so instituted, since the jurisdiction of the Commission "to hear, determine, render judgment and make orders and decrees" affecting rates and tolls depends upon "due notice" to the party interested.

APPEAL from decision and order of the Public Service Commission, Washington County, overruling a petition by an electric power company to establish certain rates, on the ground that the Commission had no authority either to pass upon or fix rates in advance of their being filed with the commission by the public service corporation in the manner provided by statute. *Judgment sustaining action of the Public Service Commission and result certified to the Commission.*

*Fred E. Gleason* and *Allen Hollis* (Concord, N. H.), for the appellant.

*S. Hollister Jackson* and *Edward H. Deavitt* for the appellee.

SLACK, J.   The defendant is a public service corporation engaged in the manufacture and sale of electricity for light, heat, and power purposes. It operates chiefly in the cities of Montpelier and Barre and the towns of Barre and Williamstown.

Sometime prior to November 27, 1920, it filed with the Public Service Commission, pursuant to G. L. 5066, schedules showing the rates and charges which it had established, and which were then in force, for electricity furnished by it for power purposes. On the aforementioned date it filed with said Commission a schedule of rates which were in addition to its then existing rates for power service, to become effective January 1, 1921. This new schedule included what was therein designated a "Fuel Charge," and changes in defendant's one year and five year contracts. The fuel charge, which is the only item necessary to be noticed, provided, in substance, that whenever it was necessary for the defendant to operate its steam generating stations to supply power service, the cost of the fuel used for that purpose should be divided *pro rata* among the purchasers of electricity for power purposes on the basis of the kilowatt hours used by each, the additional charge to be included in the consumers' regular monthly bill. The petitioners protested the changes proposed by the new schedule by petition in writing filed with the Commission December 31, 1920, wherein they asked, among other things, that the Commission, upon hearing, fix a reasonable rate for the users of electric power and for domestic and municipal purposes. After due hearing on said petition, the scope of which hearing was limited by the Commission to the so-called fuel charge "without prejudice to either party interested as to any other matters presented by said petition," the Commission found and reported that that charge was unreasonable and unfair to the petitioners, and not a proper method of increasing rates; and ordered that it be discontinued, and that no charges on account thereof be made or collected by the defendant. The report and order were filed May 18, 1921. On June 23, 1921, the defendant filed with the Commission what it denominated a "Motion for rehearing and other relief." The purpose of this motion is best indicated by the prayer thereof, which is as follows:

"(1) That the Commission grant a hearing on the above entitled cause, and afford an opportunity for the company to introduce evidence of the facts hereinbefore set forth in outline and in connection therewith to present such arguments and authorities as may be proper; and (2) that the Commission fix as a just and reasonable rate for metered power service, effective January 1, 1921, in place of the fuel charge, so-called, in Schedule

E of the company's rate schedule now on file and in effect, the following,'' then followed a schedule of new rates, which had not been filed with the commission, or, so far as appeared, made public. The Commission held, as a matter of law, that it had no authority either to pass upon or fix rates in advance of their being filed with the Commission in the way provided by statute, and denied the motion.

[1]    The proceedings leading up to this ruling are thus set forth somewhat at length in order that the situation under which the ruling was made may appear, because certain statements in the defendant's brief indicate that it considers the question affected by the fact that it was still acting on the petition of the protestants wherein they asked to have a reasonable rate fixed, rather than in an independent proceeding instituted by the defendant for the purpose of having the Commission pass upon rates which had never been filed with it. This position, however, is untenable. The protestants' petition had been disposed of by an order adverse to the defendant, from which no appeal was taken; and no request for a rehearing was made within the time allowed by law. G. L. 5038, 1561; Chancery Rule 36; *Canerdy* v. *Baker,* 55 Vt. 578. The defendant's motion, therefore, can be treated, only, as a petition by the defendant to have the Commission pass upon a schedule of proposed rates not previously filed with the Commission or made known to the public. The ruling made by the Commission plainly shows that it understood and treated the matter as standing in this way. With the proceedings in this posture, was the ruling of the Commission correct? This is the first time that the question at issue has been before this Court, and our statute touching the subject is so unlike the statutes in other jurisdictions that little aid is to be found in the reported cases. That this is so is indicated by the fact that neither party has called our attention to a single case where the question here involved has been decided.

That the Commission has authority to fix the rates, tolls, and charges of public service corporations is, in effect, conceded by both parties. The question is what is necessary to give the Commission jurisdiction, or authority to act in these matters. The defendant contends that the Commission has authority to act upon application of either the producer or the consumer, while the petitioners say that the Commission's authority attaches

only when an established rate, or a proposed change, is pro- tested.

General Laws, section 5066, as amended by Acts 1919, No. 129, provides: "Every company subject to the provisions of this chapter shall file with the Commission within a time to be fixed by it, schedules which shall be open to public inspection, showing all rates, tolls and charges which it has established and which are in force at the time, including joint rates, for any service performed, or any product furnished by it, within the State, and as a part thereof shall file the rules and regulations that in any manner affect the tolls or rates charged, or to be charged, for any such service or product; and a change shall not thereafter be made in any such schedules, including schedules of joint rates, or in any such rules or regulations, except upon thirty days' notice to the Commission: and all such changes shall be plainly indicated upon existing schedules, or by filing new schedules in lieu thereof thirty days prior to the time the same are to take effect; provided that the Commission may, upon application of any company subject to the provisions of this chapter, prescribe a shorter time within which such reduction or change may be made."

Section 5067 provides: "Every company subject to the provisions of this chapter shall keep on file in every station or office thereof where payments are made by consumers or users, open to the public, and in such form and place as to be readily accessible to inspection by the public, a copy printed in plain type of so much of its said schedules as the Commission shall deem necessary."

Section 5061 provides that the Commission "shall have jurisdiction, on due notice, to hear, determine, render judgment and make orders and decrees in all matters provided for in the charter or articles of any corporation owning or operating any plant line or property subject to supervision under this chapter, and shall have like jurisdiction in all matters respecting; * * * IV. The price, toll, rate or rental charged by any company subject to supervision under this chapter, when unreasonable or in violation of law."

Section 5062 provides: "If, upon such investigation, the rates, tolls, charges or schedules are found unjust, unreasonable, insufficient or unjustly discriminatory, or to be preferential or

otherwise in violation of a provision of this chapter, the Commission may order and substitute therefor such rate or rates, tolls, charges, or schedules, and make such changes in any regulations, measurements, practices or acts of such company relating to its service, and may make such order as will compel the furnishing of such adequate service as shall at such hearing be found by it to be just and reasonable.''

[2]    Whatever the procedure may be relative to other matters placed under the control of the Public Service Commission by Chap. 216 of the General Laws, of which the sections quoted are part, it is apparent from a careful study of those sections that the initial step in fixing rates, tolls, etc., is the filing of the schedule required by G. L. 5066; and that the rate appearing in such schedule when so filed, unless protested, becomes, by implication of law, the lawful rate which the producer may charge and which the consumer must pay, and continues to be the rate governing both producer and consumer until changed in the manner prescribed by statute.    The only method pointed out by statute whereby a producer can change an existing public rate or regulation, that is, a rate or regulation which applies to all persons in general, is by giving notice of the proposed change to the Commission and to the public by filing new or amended schedules as required by G. L. 5066 as amended by No. 129, Acts 1919.    The rate or regulation specified in such new or amended schedule, unless protested, becomes effective on the date specified in the schedule, if beyond the limit fixed by statute, or by the Commission, and consequently binding on all parties concerned, without action on the part of the Commission.    Under this procedure not only is the public appraised of existing rates and regulations, but, unless the time is shortened by the Commission, it has thirty days' notice of any attempt by the producer to increase or change its rates or regulations before the same become effective (No. 129, Acts 1919)—ample opportunity in which to act, if action is desired.    On the other hand, under the procedure contended for by the defendant, the *public* would have no notice of a proceeding instituted by a producer for the purpose of increasing or changing its rates or regulations, because no notice is provided for in such cases.

[3]    It will not be presumed that the Legislature intended to ignore the public in a matter of such vital importance to it

as the fixing of rates, tolls, etc., of public utilities, and yet, such is the effect of the statute if such rates and tolls can be established without the public having an opportunity to be heard.

[4]    The lack of provision for notice to the public of proceedings instituted for this purpose by a producer in the manner contended for by the defendant satisfies us that such proceedings were not intended by the Legislature, and that the Commission has no authority to entertain the same, since its jurisdiction ''to hear, determine, render judgment and make orders and decrees'' affecting rates and tolls depends upon ''due notice'' to the party interested.

The authority conferred upon the Commission to prescribe a shorter time than thirty days in which changes in schedule rates may be made does not empower it to authorize such changes without any notice, as it would be compelled to do if it entertained the defendant's so-called motion. Such a construction would violate the plain language of the statute.

What has been said thus far applies only to the method of fixing or changing public rates under the provisions of G. L. Chap. 216.

Undoubtedly cases may arise involving a change in rates or tolls in which the producer not only may, but must, institute proceedings in order to obtain the desired relief. This can only happen, however, where matters of private rather than public concern are involved. Such is the case of *Rutland Ry. Light & Power Company* v. *Burditt Brothers,* 94 Vt. 421, 111 Atl. 582,. where the producer had a term contract with the consumer to furnish power at a specified rate, and it was held that the producer could not change the contract rate to a higher rate simply by filing a schedule of increased rates with the Public Service Commission, that something more was necessary to relieve the producer from the terms of the express agreement.

Although the provisions of G. L. 5689 are there referred to, they are not the necessary basis of that decision, a like result would have been reached under the provisions of the sections under consideration in the instant case. Chapter 236 of the General Laws, of which section 5689 is part, was undoubtedly enacted to meet a growing tendency on the part of public utilities to utilize the water power of the State for generating electricity to be used for commercial purposes outside the State, and to com-

pel those utilities to furnish electricity to consumers located within the State under regulations and rates fixed by the Public Service Commission, and was not intended to supersede or in any way interfere with the authority of. the Commission under G. L. Chapter 216 which confers upon the Commission general supervisory powers over utilities, including the fixing of rates for electricity sold for public or general use. The primary object of Chapter 236 is to compel such utilities to furnish electricity to consumers located within the State, and the authority to fix rates, there conferred, is a secondary matter confined to cases where the aid of the Commission is invoked to enforce the main purpose of the act, and does not apply to public rates. This is clearly indicated by the procedure prescribed by the act. G. L. 5691.

What was said in *Rutland Ry. Light & Power Co.* v. *Burditt Brothers* concerning the effect of the schedule of rates filed with the Commission and the method by which such rates may be changed, must be taken as applying to the question there presented, namely, the method of changing rates fixed by express contract between the producer and a consumer, and not as indicating the manner of fixing public rates, and when so considered, nothing there appearing is in conflict with the views herein expressed.

*Judgment that the Public Service Commission has no authority to pass upon or fix rates in advance of their being filed with the Commission as prescribed by statute, and that the motion for rehearing be denied. Let the result be certified to the Public Service Commission.*