## Harold Carpenter et ux v. Home Telephone Company

[163 A.2d 838]

May Term, 1960

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed September 6, 1960

*John B. Harrington* for the petitioner.

*Arthur L. Graves* for the petitionee.

**Barney, J.**  The Home Telephone Company of Alburg required a $500.00 deposit of its subscriber, Robert Carpenter, petitioner here, as a prerequisite to the continued furnishing to him of residential telephone service.  The company justified the action as being in accordance with its rate and regulation schedule which had been on file with the Public Service Commission and effective since 1953; paragraph VII, D, of which provides as follows:

"In order to safeguard it against loss of charges or tolls due at the time service may be terminated, the Telephone Company may require a customer or applicant for telephone service to make a cash deposit equal to the estimated amount of exchange and toll service charges for any period of three months. The receipt of such a deposit by the Telephone Company shall in no way relieve the customer or applicant from compliance with the Telephone Company's regulations as to advance payments (if any) and the prompt payment of bills, nor constitute a waiver or modification of the practices of the Telephone Company for the discontinuance of service for non-payment of any sums due for service rendered."

The petitioner, by letter, asked the Public Service Commission to review this action by the telephone company. He concedes that this proceeding is not a challenge of the regulation, but contends that he is entitled to review of the company's resort to the regulation as being arbitrary and discriminatory. He thus contests the lawfulness of the company's action.

At the hearing petitioner's wife was allowed to join as a party plaintiff over objection of the company. The chairman of the Public Service Commission ruled that the burden was on the company to establish that resort to the rate regulation concerning deposits was justified. The company was granted an exception to this ruling.

Among the facts found by the Commission certain ones are significant for the purpose of this review. It was found that it was reasonable to assume that the Carpenters would incur toll charges in excess of $100.00 a month. The schedule of charges actually incurred was found to be as follows:

| | | | |
|---|---|---|---|
| June 1, 1959 | $ 28.49 | September 1, 1959 | $139.70 |
| July 1, 1959 | 55.17 | October 1, 1959 | 223.80 |
| August 1, 1959 | 177.71 | November 1, 1959 | 43.51 |

The application for a phone had been made on May 9, 1959, since the Carpenters were selling the business whose phone had been in their residence until that time. On August 17, 1959, a request for a $500.00 deposit was made by the Home Telephone Company. On September 18, 1959 the phone service was disconnected for failure to make the requested deposit. The Commission went on to find that the

Carpenters' credit was good and that the company had made no first hand attempts to check the credit of the Carpenters with other sources. In supplemental findings the Commission stated it found no evidence in the record that the credit of Robert Carpenter is bad.

After making the findings the Commission then issued its order in the following language:

"On the basis of the report and findings, as amended, IT IS HEREBY ORDERED that a demand for Five Hundred ($500.00) Dollar deposit under the circumstances as set forth is unreasonable and arbitrary and that telephone service to Robert and Evelyn Carpenter be reinstituted immediately and IT IS FURTHER ORDERED that a reasonable deposit may only be required when and if there is reasonable evidence that the credit standing of the subscriber is such that it is likely a loss of tolls or charges will result to the Company."

It is from these findings and this order that the company has appealed.

The petition contends that it is by virtue of the provisions of 30 V.S.A. §216 that the Public Service Commission has authority to review in this proceeding the company's resort to its deposit regulation VII, D. The provisions of §216 are as follows:

"When, upon hearing, the rates, tolls, charges or schedules are found unjust, unreasonable, insufficient or unjustly discriminatory, or are found to be preferential or otherwise in violation of a provision of this chapter, the commission may order and substitute therefor such rates, tolls, charges or schedules, and make such changes in any regulations, measurements, practices or acts of such company relating to its service, and may make such order as will compel the furnishing of such adequate service as shall at such hearing be found by it to be just and reasonable. This section shall not be construed to require the same rates, tolls or charges from any company subject to supervision under this chapter for like service in different parts of the state, but the commission in determining these questions shall investigate local conditions and its final findings and judgment shall take cognizance thereof."

We would agree that there is in the Public Service Commission a broad authority to deny to regulated companies the right to subject

their customers to unreasonable, arbitrary or discriminatory rate or service practices, separate from regular rate proceedings. But this authority derives from 30 V.S.A. §209. Subsection 4 of section 209 specifically gives the Commission jurisdiction over regulated companies in all matters respecting the price, toll, rate or rental charged by any company subject to its supervision, when unreasonable or in violation of law, and subsection 6 of section 209 gives the Commission the power to restrain any company subject to supervision from violations of law, unjust discriminations, usurpation or extortion. There are broad limits, however, within which the regulated company is permitted and expected to exercise freely its proper managerial competence. The manner in which an individual requests review by the commission of a claimed unlawful act or neglect by a company is set out in 30 V.S.A. §208. Where, as here, relief is sought by petition under these statutory provisions, the public service commission has authority to review the alleged unlawful or negligent acts of the regulated company. Otherwise permissible actions of a company become unlawful only when they pass the recognized bounds of operational management and overstep the limits of reasonableness.

The findings of the commission disclose that the actual toll charges incurred in the three month period of August, September and October exceeded the estimated $500.00. The company had the right to and did invoke its regulation according to its terms, and the reasonableness of its estimate is confirmed by the findings. Rate schedules on file with the Public Service Commission become lawful rates which remain in force until changed in the manner prescribed by statute. *Jones* v. *Montpelier,* 96 Vt. 397, 402, 120 A. 103. Since the act of the company was in all respects lawful and in accordance with its filed rate schedule, the Commission's conclusion that the $500.00 deposit requirement was "unreasonable and arbitrary" is not supported by the facts it found. Under 30 V.S.A. §11 the findings of the commission are conclusive, having the force and effect of a report of a special master. Since the portion of the order denying the company's right to demand a deposit is not supported by the findings, it must be reversed. *Western Union Telegraph Co.* v. *Burlington Traction Co.,* 90 Vt. 506, 519, 99 A. 4; *Bacon* v. *B & M Railroad Co.,* 83 Vt. 528, 533, 77 A. 858.

Although the petitioner has disclaimed any attack on the rate schedule of the company in this proceeding, his reference to 30 V.S.A. §216 recognizes that the effect of the second half of the order of the commission was to change the schedule on file with the commission. In making it a prerequisite to the application of regulation VII, D, that the company demonstrate a credit standing in the subscriber such as to make a loss of tolls or charges likely, the commission has materially altered the regulation. The imposed limitation is not implicit in the original regulation as filed nor is it necessarily required by standards of reasonableness or nondiscriminatory treatment. Until the commission made its order the company was entitled to resort to the regulation in circumstances where the credit standing of the subscriber was not necessarily involved.

30 V.S.A. §216 is the authority under which the commission may, in a proper hearing, set substitute rates and schedules and make orders relative to the furnishing of adequate service. This authority is available to the commission when companies undertake to change their rates by filing new schedules under the provisions of 30 V.S.A. §§223 and 224. It is also available for proceedings brought under 30 V.S.A. §208, which specially provides that the commission has authority, either at the request of a municipal governing body or of its own motion, to investigate existing rate schedules.

Under all of these provisions all persons affected by proposed changes are entitled to notice and opportunity to be heard. 30 V.S.A. §209, when it sets out the jurisdiction of the commission for holding hearings and making orders in connection with public utilities, makes "due notice" a prerequisite. The economic health of the regulated company is a matter of public interest. More particularly, it is to the interest of the other subscribers of the Home Telephone Company to avoid having the burden of toll charge losses fall upon them, if possible. This alone would give all of them standing to be heard on any amendment to regulation VII, D. Here, before hearing, no one had notice that the company's rate schedule was to be changed. Unless the issue is raised in proceedings designed to give notice to all interested parties that rate schedules are to be dealt with, there is no power in the public service commission to initiate a rate change or order a rate schedule amended. *Jones* v. *Montpelier, supra,* 96 Vt. 397, 403, 120 A. 103.

To put the burden on the regulated company to establish its right to invoke any duly filed and established rate regulation on each occasion of its use would be to nullify the notice protection now in the law and set the statutory procedures at naught, or would destroy all certainty and stability in filed rate schedules and create a situation of endless rate litigation. This would make responsible management and businesslike operation impossible.

The second half of the commission's order, amending as it does the company's rate schedule, overreaches the statutory authority of the commission as invoked by the petition. Therefore this second half of the order is also unsupported and the judgment in favor of the petitioners must be set aside. *In re Lake Sadawga Dam,* 121 Vt. 367, 159 A.2d 337, 339.

Since the order cannot stand, consideration of other exceptions is unnecessary. It might be well to state that even were the position of the commission limiting the application of the deposit regulation to a question of credit well taken, the importation of the property qualifications of Mrs. Robert Carpenter to support the credit of her husband, the petitioner and named subscriber, is without justification. So long as the petitioner was the sole telephone subscriber the company's ability to pursue assets owned jointly or by his wife solely was problematical. See *Century Indemnity Co.* v. *Mead,* 121 Vt. 434, 159 A.2d 325.

*Exceptions sustained, the order of the Public Service Commission is vacated and set aside, and the petition is dismissed with costs to the petitionee. Let the result be certified to the Public Service Commission.*