## Thomas D. North and Virginia J. North

### v.

## City of Burlington Electric Light Department

[ 214 A.2d 82 ]

June Term, 1965

Present: Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.

Opinion Filed October 5, 1965

*Wick, Dinse & Allen* for plaintiffs.

*L. John Cain* for utility.

**Holden, C. J.** This is an appeal from an order of the public service board. The plaintiff Thomas D. North and his wife Virginia receive electric service from the defendant's municipally owned electric utility. They instituted these proceedings by written complaint to the public service board in protest to the rate classification assigned by the defendant to their use of electric energy. After proper notice and hearing, the board filed its report of the facts and entered an order restoring the plaintiffs to a more favorable classification. The defendant appeals from this order persuant to 30 V.S.A. § 232.

The facts reported by the board are not questioned. Since the commission's report has the force and effect of a report by a special master in courts of equity, they are conclusive in the disposition of the question presented on appeal. 30 V.S.A. § 11; *Western Union* v. *Burlington Traction Co.,* 90 Vt. 506, 519, 99 Atl. 4; *Carpenter* v. *Home Telephone Co.,* 122 Vt. 50, 53, 163 A.2d 838.

The board has reported that the plaintiffs reside in a large fifteen-room house in a residential section of Burlington. During eight or

nine months of the year, seven rooms on the second floor of the North home are rented and occupied by students attending Champlain College. The entire house is available for use by the North family during the remaining months.

The occupancy by the students is according to a joint agreement submitted by the college governing the arrangement between students, parents, the college and the plaintiffs. The enterprise produces a yearly gross income of $3,744.

The North family occupy more rooms in their dwelling than are available for rental to students. The schedule of rates filed by the defendant with the public service board provides for a Combination Residential Rate, Schedule 2:

"If a customer residing in a dwelling house has for rent three or more rooms in such dwelling, and if such customer and the members of his family occupy as many rooms as, or more than, are for rent, then such customer shall be entitled to purchase electricity under any available domestic rate.

"If a customer residing in a dwelling house has for rent three or more rooms and if he and the members of his family occupy less rooms than are for rent, then domestic rates are not available to such customer."

The defendant's established rate scheduule provides for commercial service under General Rate Schedule B-5:

This rate is for General purposes; i.e. lodges, granges, churches, clubs, tourist homes, nursing homes, offices, beauty parlors, fraternities, stores, shops, schools, gas stations, restaurants, and manufacturers.

Until October 6, 1964, the plaintiffs were billed for electric service furnished by the defendant under the Combination Residential Rate Schedule C-2. At that time the defendant made a determination that the charges for the plaintiffs' electric service should be fixed according to the commercial classification, under General Rate, Schedule B-5. The defendant has billed the plaintiffs accordingly.

The Public Service Board concludes its report by stating:

"Although we are inclined to agree that a commercial use is being made of the North premises, nevertheless an express exception has been made under Residential Service, and the Norths, since they occupy more rooms than are for rent in their house, clearly fall within this exception and are thus entitled to a domestic rate, in this case, the Combination Residential Rate, Schedule C-2."

The order which followed adjudged that the plaintiffs were entitled to be billed according to the Combination Residential Rate, Schedule C-2. It ordered the defendant to make appropriate adjustment in the plaintiffs' account to compensate for the excess charges imposed under the commercial schedule since October 6, 1964.

This appeal from that order challenges the jurisdiction of the public service board to interpret its schedules and classify customers' use of electric energy. It is the defendant's contention that this is strictly a function of management.

In the first instance, it is the responsibility of the utility to make a determination of the particular rate schedule applicable to the consumer according to the use made of the electric energy supplied him. But the company's decision in this regard is not final in the sense that it is beyond review and correction by the public service board.

█ The legislature has clothed that administrative agency with judicial power to entertain proceedings and determine the facts upon which the existing laws shall operate in a controversy between consumers and the public service corporation. *Sabre v. Rutland Railroad Co.*, 86 Vt. 347, 362, 85 Atl. 693. In the exercise of this judicial function the public service board has the authority and the duty to investigate any claimed unlawful act adversly affecting a consumer served by a utility subject to its supervision.

The specific authority to adjudicate the present controversy is found in 30 V.S.A. §§ 208, 209 (4). Upon complaint by a consumer adversely affected by a claimed unlawful act on the part of the utility, on due notice to the public service corporation, the board has jurisdiction "to hear, determine, render judgment and make orders and decrees — in all matters respecting . . . (4) The price, toll, rate or rental charged by any company subject to supervision under this chapter, when unreasonable or in violation of law . . . "

█ The rates which the defendant could lawfully charge the plaintiffs are governed by its schedule of tariffs filed with the board in accordance with the provisions of 30 V.S.A. § 223. When the defendant's schedule became effective as provided in this section, the rates were established as the lawful rate which the utility could charge and which the plaintiffs were required to pay to obtain service. *Jones v. Montpelier & Barre Light & Power Co.*, 96 Vt. 397, 402, 120 Atl. 103; *Carpenter v. Home Telephone Co.*, supra, 122 Vt. at 53. Any attempt by the utility to impose rates at variance with the filed schedules renders the charges unlawful within the meaning of 30 V.S.A. § 209, sub-

section (4). And the Legislature has established the public service board as the tribunal to hear the consumer's complaint and issue its order if it found a violation. See *Hall* v. *Village of Swanton,* 113 Vt. 424, 428, 35 A.2d 381.

In the present case, the board determined that the defendant, in applying the commercial rate to the plaintiffs' electrical consumption, ignored the express exception established in its filed schedule. Since the charges imposed exceeded the lawful rate, it was in violation of law and properly subject to the corrective action expressed in the order.

The action taken was entirely consistent with our holding in *Carpenter* v. *Home Telephone Co.,* supra, 122 Vt. at 53. In that instance the defendant utility invoked a credit regulation lawfully in effect as a part of its rate schedule on file with the public service commission, the predecessor to the present board. The commission undertook to relieve the consumer by changing the regulation without prior notice or hearing. We held the telephone company had the right to invoke the regulation filed as a part of its rate schedule until the schedule was amended in the manner directed by the statute. Since the effect of the commission's order was to abrogate a part of the established schedule, the commission exceeded its authority.

Here the defendant departed from its established schedule of rates. The public service board has held the company to it. In this there was no error.

*Order of the public service board affirmed. Let the result be certified.*