### In re Petition of Vermont Welfare Rights Organization

[326 A.2d 828]

No. 4-74

Present: Barney, C.J., Smith, Daley and Larrow, JJ.

Opinion Filed October 1, 1974

Motion for Reargument Denied October 17, 1974

*Nancy E. Kaufman, Esq.*, Vermont Legal Aid, Inc., Montpelier, for Vermont Welfare Rights Organization.

*Averill Laundon*, General Counsel, *Richard H. Saudek*, Special Counsel, and *Thomas R. Viall*, Staff Attorney, for Public Service Board.

*Stella B. Hackel, Esq.*, of *Ryan, Smith & Carbine*, Rutland, for New England Telephone and Telegraph Company.

**Smith, J.** The Vermont Welfare Rights Organization (V.W.R.O.), represented by Vermont Legal Aid, Inc., petitioned the Public Service Board under 3 V.S.A. § 806 to promulgate

rules and regulations governing disconnection of customers' service by utility companies in Vermont. Proposed rules accompanied the petition. The Board commenced rule-making proceedings pursuant to 3 V.S.A. § 803 and, after receiving comments and holding hearings, issued General Order No. 57. This Order embodies V.W.R.O.'s proposed rules and regulations, as amended during the rule-making process.

The New England Telephone & Telegraph Company, a utility affected by the Order which has unsuccessfully sought a stay of the Order by the Board, appeals here under 30 V.S.A. § 12 and 3 V.S.A. § 815(a) requesting this Court to hold the Order null and void. No serious contention is advanced that the Board failed to comply with the rule-making procedures of the Administrative Procedure Act (A.P.A.), Chapter 25 of Title 3. The issue before us is whether the Board had authority to employ such procedures to issue an order of this nature or whether it was required to utilize the contested case procedures of the A.P.A. and to comply with the rate-making statutory provisions of Title 30.

General Order No. 57 is an attempt to prescribe when, under what conditions, and in what manner a utility may disconnect service, for nonpayment of a bill or otherwise. Possibly the most controversial section of this Order is the fifth, which prohibits disconnection where a customer claims inability to pay an outstanding bill in full if such customer:

    (1) Pays a reasonable portion of the outstanding bill;

    (2) Agrees to pay all future bills as they become due; and

    (3) Agrees to pay a reasonable portion of the outstanding bill in installments until it is fully amortized.

One of the factors which the utility must consider in determining what is a "reasonable portion" is the size of any deposit required of the customer. Another section of the Order prohibits a utility from charging more than its standard reconnection fee even if reconnection occurs after 5:00 p.m., where the disconnection occurred after 2:00 p.m. Gas and electric utilities must make available to their residential, nonseasonal customers a "budget plan", which is a billing procedure averaging estimated utility costs over a yearly period.

The Order, where not specifically limited to certain utility industries, as in the example of the budget plan mentioned above, applies to all electric, gas, water, or telephone utilities under the jurisdiction of the Board. The final section requires that all "[u]tilities subject to this General Order shall file with the Board on or before January 10, 1974, revisions of any tariff provisions that are inconsistent with the provisions hereof."

■ V.W.R.O. contends that this Court lacks jurisdiction because the appellant should first challenge the validity or applicability of General Order No. 57 as a rule in the county, now superior, court under 3 V.S.A. § 807. However, we recently held in a decision dissolving the then county court's injunction of the "purchase power clause" that any order that "has its crucial impact on the rights and liabilities of the parties as a rate regulation", *Moore* v. *Gilbert,* 132 Vt. 365, 321 A.2d 13, 15 (1974), should not be stayed, except by the Board or this Court or a justice thereof. *Id.* Appeals from an order of this type come directly here under 30 V.S.A. § 12; it would, of course, be absurd to send an appellant to a lower court because of the possibility that that tribunal might approve, rather than stay, an order operating as a rate regulation.

General Order No. 57 is a regulation affecting rates. It requires a utility to continue furnishing service to a customer unable to pay his bill in full when due without allowing it to impose a finance or interest charge as a condition to accepting installment payments. It is as much a regulation affecting rates or rate schedules as was the then Public Service Commission's order governing when the utility could require a deposit from a subscriber vacated in *Carpenter* v. *Home Telephone Co.,* 122 Vt. 50, 52, 163 A.2d 838 (1960).

■ A utility has "implied power to adopt reasonable and lawful regulations, without unjust discrimination, for the conduct of its business." *Hawkins* v. *Vermont Hydro-Electric Co.,* 98 Vt. 176, 181, 126 Vt. 517 (1924). Utilities governed by General Order No. 57 have filed their disconnect regulations with the Board under 30 V.S.A. § 225. In this Order, the Board requires the utilities to file revisions of any of their

previous disconnect regulations inconsistent with the terms of the Order.

In promulgating this directive, the Board did not proceed in accordance with the applicable statutory requirements. "Rate schedules on file with the Public Service Commission [Board] become lawful rates which remain in force until changed in the manner prescribed by statute." *Carpenter* v. *Home Telephone Co., supra,* 122 Vt. at 53; accord, *North* v. *City of Burlington,* 125 Vt. 240, 243, 214 A.2d 82 (1965). "30 V.S.A. § 216 [now § 218] is the authority under which the commission [board] may, in a proper hearing, set substitute rates and schedules, and make orders relative to the furnishing of adequate service." *Carpenter* v. *Home Telephone Co., supra,* 122 Vt. at 54. To substitute its regulations for those which a utility has previously adopted and filed, the Board must first find the individual company's regulations to be unjust, unreasonable, insufficient, unjustly discriminatory, or preferential under 30 V.S.A. § 218.

■   The Board's finding that "Although in many instances utility practices are fair and reasonable, in many respects present disconnect practices and procedures are arbitrary, unjust, discriminatory and oppressive" is an insufficient foundation for substitution of its own regulations governing disconnect practices. This finding, paraphrasing the statutory language of 30 V.S.A. § 218, is unaccompanied by any factual supporting statements required by 3 V.S.A. § 812. *Cf. In re J.M.,* 131 Vt. 604, 608, 313 A.2d 30 (1973). The Board's attempt to apply this conclusory finding to approximately one hundred eighty utilities in Vermont and its failure to examine each individual utility's regulations to determine whether such regulations are either satisfactory or wanting constitutes noncompliance with the rate-making requirements of Title 30.

Because General Order No. 57 is a regulation affecting rates, the contention advanced that the *Carpenter* decision is not relevant because the Board was acting pursuant to its rule-making authority cannot be accepted. The finding required by 30 V.S.A. § 218 before an individual utility's rate regulations can be altered cannot be circumvented by changing all of the utilities' rate regulations and then character-

izing the product of the alteration as "a statement of general applicability that implements, interprets, or prescribes law or policy" under 3 V.S.A. § 801(7).

As in *In re Petition of Allied Power & Light Co.*, 132 Vt. 354, 321 A.2d 7 (1974), the scope of the Board's rule-making power is an issue that need not be resolved since the Order conflicts "with absolute requirements of the statutes relating to rate-making." *Id.* 321 A.2d at 10. These rate/rule conflicts appear to be attributable, at least in part, to the Board's unduly expansive view of its rule-making power. To allow this misconception to continue may result in additional needless litigation, at great expense to the public, of cases of this nature.

██ The A.P.A., by itself, only authorizes the making of specific procedural rules. See 3 V.S.A. §§ 802(a), 806. Beyond this, any rule-making authority of an individual agency must be found in that agency's enabling legislation. *Cf.* 3 V.S.A. § 801(1). 30 V.S.A. § 11(a) authorizes the Board to promulgate and adopt rules procedural in nature. Aside from this provision, we find no other in Title 30, nor anything in this jurisdiction's case law, that authorizes the utilization of rule-making power outside the more protective confines of a contested case proceeding. *Cf. McFeeters* v. *Parker*, 113 Vt. 139, 30 A.2d 300 (1943); *Trybulski* v. *Bellows Falls Hydro-Electric Co.*, 112 Vt. 1, 20 A.2d 117 (1941); *Sabre* v. *Rutland R.R. Co.*, 86 Vt. 347, 85 A. 693 (1913).

█ As General Order No. 57 contains no rules of a procedural nature that are not fatally intertwined with the sections affecting rate regulations, the entire Order will be vacated.

*General Order No. 57 of the Public Service Board is vacated.*