**In re: New England Telephone and Telegraph Company**

[305 A.2d 598]

No. 65-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed May 4, 1973

*Ryan, Smith & Carbine,* Rutland, for New England Telephone and Telegraph Company.

*Thomas J. Kenney, Esq.,* Burlington, for the Public.

*Nancy Kaufman, Esq.,* Vermont Legal Aid, Inc., St. Johnsbury, for Vermont Welfare Rights Organization.

*Averill Laundon, General Counsel,* and *Robert A. Mello, Special Counsel,* for Vermont Public Service Board.

**Barney, J.** An order of the Public Service Board barred the implementation of a new rate schedule by the petitioning

New England Telephone and Telegraph Company. The company sought immediate relief by bringing a motion to this Court to suspend that order and permit the proposed rates to be put into effect under bond, as authorized by 30 V.S.A. § 227(a).

This all relates to the statutory procedures for rate changes by public utilities. The mechanics are quite simple. A company under the supervision of the rate-regulation authority of the Public Service Board may seek a change in its existing rate schedule by filing with the board its new proposal, to take effect thirty days from the date of filing. 30 V.S.A. § 225. Initiative then shifts to the board, which may, up to six days before the effective date of the new rates, order an investigation of the justness and reasonableness of the change. Such proceedings by the board may also come about by petition from persons adversely affected by the change, all as provided by 30 V.S.A. § 226(a).

Once such proceedings have been determined upon, the board has three options available: (1) the new rates may be allowed to take effect without restraint; (2) the new rates may, in the discretion of the board, be held back until final disposition of the instituted proceedings, but not longer than six months; (3) the new rates may be held back, but the board, after hearing, may set reasonable temporary rate increases pending determination of the final rates to be charged, if the established circumstances of the utility warrant.

When the board orders that a proposed rate change not go into effect, without providing for interim temporary rates, the provisions of 30 V.S.A. § 227(a) become operative:

> If the board orders that a change shall not go into effect until final determination of the proceedings, it shall proceed to hear the matter as promptly as possible and shall make its determination within six months from the date that the change otherwise would have gone into effect. If the board fails to make its determination within such time, the company may put a changed rate into effect upon filing with the board a bond running to the board members and their successors in office in amount and with sureties approved by the board, conditioned that within thirty days after the termination of such pro-

ceedings, the company shall repay to the persons from whom such changed rates shall be collected all sums collected in excess of the rate in force at the time such changes are filed or of such rate as shall be determined to be just and reasonable.

In the case at hand the company filed a change in tariffs on September 15, 1972, to become effective on October 15, 1972. The board ordered that these new rates not go into effect, and commenced an investigation into the reasonableness and fairness of the proposed changes, all in accordance with 30 V.S.A. § 226(a). The six months period set out in 30 V.S.A. § 227(a) expired April 15, 1973. In the interim the board had held many hearings around the state, and had before it not only the petition and other pleadings, but also the pre-filed testimony furnished by the company in support of its rate request.

On April 12, 1973, the board issued the order that provoked this proceeding. That order rejected the proposed tariff changes filed by the petitioning company, required it to continue to charge for services on the basis of the old rates in effect when the new schedule was proposed, and, in effect, prohibited the putting of the new rates into effect under bond by ordering continued suspension to the time of final determination of the case. It also reserved the right in the board to implement new rates if an acceptable amended filing or justification later took place. Various motions to dismiss were denied at this time.

It is the prohibition against effectuating the new rates toward which the motion to suspend now before us is directed. Consideration of that motion does not involve full scale appellate review. That comes later; this question is preliminary, and entirely legal in nature.

Before us for decision is the question whether or not the April 12, 1973, order is a "final determination of the proceedings" as contemplated by 30 V.S.A. § 227(a). If it is, the company has lost its right to put its now rejected rates into effect under bond. Yet the board takes the position that this order is not final. Several of the intervening parties agree. Equally unexpectedly, the company and the public representative contend that the order is final. The anomaly of both

these positions can perhaps best be explained by, on the one hand, the board's determination to continue its inquiry to arrive at a just and reasonable schedule of tariffs, and, on the other hand, the company's determination that the board's rejection of its proposed rates ended this rate proceeding and entitled the company to appeal without any necessity to seek consent from the board.

The first concern is, of course, the jurisdictional justification for action on this motion by this Court. Those who would consider the order interlocutory assert that no such issue can be brought here without the consent of the board being first obtained. 30 V.S.A. § 12. In opposition, the right is claimed to be heard as an appeal from a final order under that same § 12, with the additional right, under 30 V.S.A. § 14, to seek a suspension of the board's rate order under bond. In addition to the motion before us, both the company and the public representative have filed notices of appeal, consistent with their position of finality of the order, reserving, however, their right, if available, to take an interlocutory appeal.

The appellate difficulty arises from the nature of the board's order. It treats the proceedings as incomplete and on-going, thus establishing an interlocutory posture, yet strikes down a statutory right apparently presently subsisting, thus cutting off with finality the immediate implementation of that claimed right. The dilemma of this situation might be resolved by a directory remand for the certification of an interlocutory appeal. See *State* v. *Mahoney*, 126 Vt. 258, 259, 227 A.2d 401 (1967). Or a close evaluation of the exact question at issue as a final order might be possible. See *Titus* v. *Titus*, 128 Vt. 444, 266 A.2d 432 (1970). An alternative solution might be resort to extraordinary relief under V.R.A.P. 21.

■ Each of these approaches is somewhat strained, and fraught with decisional difficulties. It appears to this Court, however, that 3 V.S.A. § 815 provides full jurisdictional authority for deciding the central issue raised by the company's motion. This is clearly an agency ruling which can be treated as immediately appealable, since it is a claim of the company that review of any final decision, if deferred, would not give an adequate remedy. Furthermore, it is plain that the other

statutory condition is fulfilled, in that the filing of this request for a ruling does not operate to automatically stay the agency decision.

Thus, as we have stated, this statute is full authority for the taking of jurisdiction over the principal issue raised by the company. We do agree with those contestants who claim that any attempt at a full-scale appeal is premature at this stage, and must be dismissed as such. We also agree that 30 V.S.A. § 14 is a measure of the relief available in this Court on issues otherwise properly here, and not a jurisdictional statute. However, the fact that the appeal purports to be brought under that statutory designation rather than some other does not necessarily require rejection where the intention of the appellant is clearly expressed, the issues plainly defined and all parties given adequate notice and opportunity to be heard. Requests for relief ought not to be turned aside because mislabelled, if jurisdiction exists and parties are not misled, particularly where the public policy concerns are as compelling, and prompt resolution as important, as in this case. *In re Petition of Frederick P. Smith,* 131 Vt. 24, 298 A.2d 823 (1972); *Town of Barnet* v. *New England Power Co.,* 130 Vt. 268, 271, 291 A.2d 396 (1972).

Turning now to the critical question, could the board, under 30 V.S.A. § 226(a), having ordered that filed rates not go into effect until final determination of the proceedings, extend by its own order the suspension of those filed rates beyond the six months authorized by 30 V.S.A. § 227(a)? The answer must be in the negative. The board's authority is entirely statutory, and it cannot outreach that support. *Carpenter* v. *Home Telephone Co.,* 122 Vt. 50, 55, 163 A.2d 838 (1960).

The legislature has declared it to be the right of a regulated utility to put into effect, under appropriate bond, its rates as filed, if a final determination is not reached within six months. The utility is thus protected against damaging delay caused by a neglectful or dilatory board. To say that this protection could be terminated, in any case where the need for some fiscal relief is demonstrated, by a board order that does no

more than reject the new tariffs, would be to set the legislative policy at naught.

But the board is quite rightly concerned about rate filings representing a perhaps unjustifiable increase so great as to have a devastating effect on utility customers, coupled with necessarily involved and protracted proceedings. There may, indeed, be rate filings so clearly made in bad faith, or so unreasonable and irresponsible, that the board might, on such grounds, be justified in refusing them as filings at the outset. But even then its general supervisory authority and responsibility would undoubtedly require further action. However, that is not the kind of rate filing we are concerned with in this case. The problem is, in the board's view, that the company "has asked for too much money."

The legislature did not leave the board empty-handed in this situation, however. Aside from the six months in which the board was expected to be able to settle the issue, an alternate provision of 30 V.S.A. § 226(a) permits the board, after preliminary hearing, to grant an immediate temporary price increase. Granted that such a solution may burden utility billing procedures, and may require extra staff work for the board, it seems clear that this was the legislative answer to rate schedule filings that, on their face, outrun the apparent immediate needs of the utility, or demand extensive evaluation. Where there has been shown a need in the utility, according to the statutory standards, this provision can afford interim relief, while detailed study of the elements determining proper rate level and design is continuing. The responsibility for any necessary repayment of charges above the final rate level is also enforced by the statutory bond requirement.

■ The language of 30 V.S.A. § 226(a) expresses the imposition of temporary rates as an alternative available to the board to its prohibition of the taking effect of a filed rate change. Since it is that prohibition that supports the implementation of filed rates under bond after six months under 30 V.S.A. § 227(a), such implementation is not available where the board's order provides for temporary rate increases, and the utility may be required to operate under such temporary rates until termination of the proceedings.

The board cannot create a new telephone rate schedule, however temporary, without time. Therefore, in line with this Court's available resort to the requirements of justice and equity under 30 V.S.A. § 14, time will be provided, and the company's right to effectuate its new rates under bond will be temporarily suspended, subject to their possible retroactive imposition as of April 15, 1973. If, by chance, the board arrives at final disposition within the time allotted, so much the better. If not, it will be the board's obligation to arrive at a reasonable temporary rate schedule increase as directed by 30 V.S.A. § 226(a), to take retroactive effect not later than April 15, 1973, or else the statutory authorization to the company in 30 V.S.A. § 227(a) must be permitted to operate, and the filed rates take effect. The bonding requirements set out by statute for these alternatives are sufficient to satisfy the provisions of 30 V.S.A. § 14. Although the Economic Stabilization issue is not ours to enforce, it certainly can be resolved in connection with any temporary rate decision. Since the only issue disposed of in this opinion relates to the order restricting the imposition of new rates, all other issues remain unresolved and, insofar as still applicable may be preserved for adjudication on the ultimate appeal.

*The order of the Public Service Board dated April 12, 1973, is stricken; however, the right of the New England Telephone and Telegraph Company to put its filed rate schedule into effect as of April 15, 1973, under 30 V.S.A. § 227(a), is stayed for ninety days from the date of this order. However, said Company shall be permitted to put said rates into effect as of April 15, 1973, at the end of that period, unless the Public Service Board has, prior to that time, established permanent rates, or authorized the imposition of reasonable temporary rates under the authority of 30 V.S.A. § 226(a), to have retroactive effect not later than April 15, 1973, and, in such case, the right of the New England Telephone and Telegraph Company to put into effect its filed rates shall terminate, all in accordance with the views expressed in the opinion. The notices of appeal filed in this case are dismissed and held for naught as premature, and the cause is remanded forthwith to the Public Service Board for the execution of the mandate of this Court.*