## In re Petition of Allied Power and Light Company, et al.

[321 A.2d 7]

No. 137-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed March 29, 1974

Motion for Reargument Denied May 9, 1974

*Ryan, Smith & Carbine* and *Donald L. Rushford, Esq.,* Rutland, for Petitioners.

*Averill Laundon,* General Counsel, and *Robert A. Mello,* Special Counsel, for Public Service Board.

*Thomas L. Hayes, Esq.,* Burlington, for the Public.

*Mary Just Skinner, Esq.,* Vermont Legal Aid, Inc., Montpelier, for Vermont Welfare Rights Organization.

**Barney, J.** This is an administrative action dealing with the adoption of a purchase power and fuel adjustment clause by electric utilities in the State. An order issued by the Public Service Board implementing such clause was challenged by appeal and is now before this Court.

The critical issue is whether or not the variable clause advanced by that Board was beyond its statutory power to authorize.

The proceeding commenced with a petition by a number of utilities to the Public Service Board (P.S.B.) with respect to a rule authorizing the inclusion of a power and fuel adjustment clause (variable clause) in electric company rate schedules. A proposed rule was made part of the petition. In response to the petition, the P.S.B. issued a notice of proposed rule-making pursuant to 3 V.S.A. § 803.

It also treated the petition as a request by petitioner as a filing for a change in their tariffs under the provisions of 30 V.S.A. §§ 208, 209, 218, 219, 225, 226, and 227. In that connection, counsel was appointed to represent the public and in particular the interests of the retail consumers of electricity. The Vermont Welfare Rights Organization, represented by Vermont Legal Aid, Inc., also asked and was granted leave to intervene in the proceedings. The public representative moved to dismiss the action, raising legal issues that were again raised during the appeal itself and will be dealt with in reviewing the final decision of the Board.

Hearings were held, evidence taken, and findings made by the Board, culminating in the promulgation of General Order

No. 55 which contained the proposed variable clause with minor modifications. This order was appealed, and the public representative and the welfare rights organization sought unsuccessfully to have the order stayed. Based on evidence produced at a hearing on the issue, as well as the legal considerations involved, including 30 V.S.A. § 14, the Board refused to order a stay. As a consequence, V.W.R.O. sought injunctive relief in a separate declaratory relief proceeding, which is simultaneously before this Court and will be separately disposed of.

As a result, in this case, General Order No. 55 stands challenged before us on a number of issues. It is questioned as a rule, and it is questioned as proper rate-making. The order itself, with its associated findings and statements, takes up some twenty-two pages of the record on appeal, and it is not necessary to reproduce it in full here. However, pursuant to V.R.A.P. 13(d), the certified questions briefed for answer by this Court are as follows:

1. Whether 3 V.S.A. §§ 803 and 806 provide authority to the Board to take jurisdiction over the Petition for the adoption of a rule or general order authorizing the Utilities to include in their tariff schedules the Purchase Power Clause.

2. Whether 30 V.S.A. §§ 208, 209, 218, 219, 225, 226, and 227 provide authority to the Board to take jurisdiction over the Petition for the adoption of a rule or general order authorizing the Utilities to include in their tariff schedules the Purchase Power Clause.

3. Whether the Purchase Power Clause approved and adopted by the Board which permits automatic rate changes relating to fifty percent or more of the total cost of service of the Utilities subject to its jurisdiction is in conflict with 30 V.S.A. §§ 208, 209, 218, 219, 225, 226, and 227.

4. Whether in making its determination as to the justness and reasonableness of the Purchase Power Clause, in the case of investor-owned Utilities, the Board was under a legal duty to consider four factors: gross earnings; operating expenses; rate base—net value of property on which return should be earned; and rate of return.

5. Whether the Board erred in failing to make provision in General Order 55 for a reduction in the return on equity allowable to each of the Utilities in order to offset the alleged reduction in risks resulting from the Clause.

6. Whether the Purchase Power Clause is unjust and unreasonable or otherwise unlawful on the grounds that if a Utility has achieved excess earnings the Board will not be aware of such condition until after the end of the year under examination, would be able to adjust rates prospectively only, and would not be able to return excess earnings to the ratepayers.

7. Whether the filing of the January 19, 1973 Petition for the initiation of the rule-making proceedings with the Board constituted a filing of rate changes in compliance with 30 V.S.A. § 225.

The most crucial of the seven questions advanced on appeal is as to whether the purchase power and fuel adjustment clause adopted by the P.S.B. allowing automatic rate changes is in conflict with Chapter 5 of Title 30. It is answered in the affirmative. Since this is dispositive of the litigation, direct answers to the other questions are not necessary. However, some will be answered in the opinion as they relate to this adjudication and their further resolution must be foregone in view of the necessity of further proceedings affecting any or all of them.

The clause with which this proceeding is concerned provides for upward and downward adjustment of utility bills as measured by the increase or decrease in the cost of purchased power or the cost of fuel required to operate generating equipment. This adjustment moves up or down from a base value established from the system's cost in 1970 or more recently, as determined by the Public Service Board. The adjustment shall be determined monthly, filed with the Board, and applied to the billings for the second succeeding month from the period of computation.

The order specified certain conditions to be attached to use of the clause and defined the manner of its implementation. Each utility was free to elect to use the clause but precluded from using any other form of purchase power or fuel adjustment clause. Prior to putting the clause into effect, each utility is required to file with the Board tariff revisions in-

corporating the clause and determining the base value to be used. The power and fuel costs subject to the operation of the clause are to be averaged over a moving six months period. Utilities making use of the clause are required to agree either to reduce the amount of any billing increase under the clause by any expense reductions achieved in non-fuel and non-power cost items, or refrain from increasing its earnings distribution, either as dividends of investor-owned utilities, patronage refunds of cooperative utilities, or payments to a municipality in excess of the level of property taxes properly assessed in the case of municipal utilities. At the end of a year, each utility is required to file with the Board a cost of service study showing its earned rate of return related to an average year rate base.

The clause was to have an effective date of a year, expiring on July 1, 1974. However, any electric utility desiring an extension may file a petition ninety days prior to the termination date and a public hearing, with the public represented, will be held. In addition, the order provides that the Board will retain jurisdiction over this case and upon good cause shown by any interested person, shall "investigate and/or hold a public hearing with respect to any matter, concerning the Clause" whether or not the matter is raised prior to the ninety day period in which an extension is to be sought.

The Board made a number of factual findings as a basis for its issuance of General Order No. 55. It found the adoption of a purchase power and fuel adjustment clause in the public interest so long as the safeguards enumerated in the order were built into the use of the clause. To underscore this conclusion, the Board found that approximately fifty per cent of the cost of service of electric utilities under the Board's jurisdiction is the cost of purchased power. This cost is, at the same time, the major cause of rate increase requests presently filed by these utilities. The Board also found that this major cause of rate cases is virtually never adjusted or varied by the rate proceedings. This is because substantially all power purchases are made through the Vermont Electric Power Company or from out of state sources and are already supervised by the Board, to say nothing of the Federal Power Commission's review of cost reasonableness of wholesale power rules under the Federal Power Act.

From this the Board determined that rate cases are an inferior method for handling and reviewing purchased power costs. They are expensive to the consumer, so time-consuming they seldom result in rates reflecting current costs and insufficiently flexible to provide a rapid response of revenues to costs in times of rapid cost changes to properly maintain the financial integrity of utilities. The Board also found that, because of its acts in a strong supervisory capacity with respect to power purchases anyway, the public is adequately protected against any failure on the part of any utility to seek the lowest available price, or against any real prospect of excessive earnings by the utilities. All these factors led the Board to conclude the use of the purchased power and fuel adjustment clause in accordance with the conditions of General Order No. 55 satisfied the test of "just and reasonable" of 30 V.S.A. § 218.

The first challenge to General Order No. 55 is that it is not authorized rule-making under the provisions of 3 V.S.A. §§ 803 and 806. These sections authorize the institution of rule-making procedures by petition and outline the procedures for adoption of such a rule, including the public notice required and the nature and extent of hearings to be afforded.

All parties have engaged in an extended debate as to whether this case involves rule-making or rate-making. Whatever General Order No. 55 may be, it does not become an aspect of rate-making until the moment when a utility invokes its purchase power and fuel adjustment clause as part of an operative rate schedule. Furthermore, insofar as such an order purports to define uniform procedures, standardize practices, and delineate the manner and mode of handling issues properly for Board consideration, it is performing a proper function of an administrative rule. The real dispute arises from a claim that procedures required under the rule directly conflict with statutes defining the manner of establishing rates.

Since this is the true substance of the conflict, it has our first attention. In so far as General Order No. 55 alters, amends, or dispenses with absolute requirements of the statutes relating to rate-making, the order must yield, at least to that extent. If there were no conflict, General Order No. 55 could then be examined as to its status as a proper, or im-

proper, exercise of the rule-making authority of 3 V.S.A. § 803.

■ There can be no dispute but that the insertion of the purchase power and fuel adjustment clause into a rate schedule is a new rate filing, and subject to the requirements of 30 V.S.A. §§ 225, 226, and 227. Under those statutes, proposed rate changes must be instituted by proper filing with the Board thirty days prior to their effective date, with notice of the proposed changes being given to affected parties as directed by the Board. Once notice of a proposal in change of rates reaches the Board, several alternatives present themselves. These alternatives have been reviewed previously. *In re: New England Tel. & Tel. Co.*, 131 Vt. 310, 305 A.2d 598 (1973).

The regulatory powers given the Public Service Board, although they must be evaluated in the light of the purposes for which they were intended, must also be construed in a manner recognizing the limits implicit in the statutory grant of authority. *In re: New England Tel. & Tel. Co.*, 131 Vt. 470, 307 A.2d 783 (1973); *Carpenter* v. *Home Telephone Co.*, 122 Vt. 50, 55, 163 A.2d 838 (1960). In this sense, the contention that the Board cannot, by rule or general order, alter the substantive rights of affected parties in rate litigation given by statute is well taken and conceded by all parties.

Turning first to the initial introduction of a purchase power and fuel adjustment clause into a rate schedule as General Order No. 55 provides, it is necessary to test the congruence of that procedure against the statutory requirements. Certainly it is not fatal for a rule or order to fill in details, regularize procedures and spell out performance in areas where the statute is indefinite or uncertain so long as the substantive requirements are not compromised. This is the usual and frequent function of agency rules.

The crucial objection to the purchase power and fuel adjustment clause is based on its automatic operation. The Board and the utilities argue in support of it that the clause contains a number of protections for the consuming public to insure that its exercise does not put rates beyond the measure of reasonable, just and non-discriminatory changes as required by 30 V.S.A. § 218. It is further contended that

the adjustment increments derived from charges to the utilities over which they have no control, and would be required to be recognized in any rate change request. Thus, the argument goes, to require extended rate hearings each time this cost factor changed significantly would be unnecessary duplication and a large diversion of rate receipts from the purchase of electricity to the cost of litigation, all to the detriment of the consumer. Furthermore, it is pointed out that this particular time is a period of rapid and substantial cost increases, so much so that insufficient rate schedules and slow response can quickly place a financial burden on a utility to the point of threatening its solvency or its very ability to provide service to the public.

The responses to those arguments have been of two kinds. The first suggests a corresponding danger of too high rates and too great a return to utilities that could not be recouped, as well as arguing that this sort of pass-through of charges or cost-plus approach would not produce hard bargaining or tight managerial practices in these areas.

These first responses have been met by the proponents of the clause by pointing to the inability of the purchasing utility to affect the charges by any managerial action. To this they add the point that power purchases are already so thoroughly supervised, both by the Board and the Federal Power Commission, that no advantage could possibly be taken of the consumer.

The second response is directed at the requirements of the statutes we have so recently reviewed. It is argued that each time the purchase power and fuel adjustment clause factor is altered and differently billed, it is a rate change and must, under the statute, be treated as such. In this regard, all of the policy arguments, however persuasive, cannot prevail if there is conflict with the statutes.

Central to our consideration of the validity of General Order No. 55 are 30 V.S.A. §§ 225 and 226. Aside from the measuring of rates as to justness and reasonableness, the legislature has assigned specific duties and procedural requirements to utilities and the Board when rates are changed. Section 225 forbids a change in schedules of tables or rates charged and on file with the Board, except on thirty days notice to the Board and such notice to parties affected by such schedules as the

Board directs. Under Section 226, the filing of this notice gives both the Board and certain persons adversely affected by the change the option of initiating procedures leading to an investigation. Although the Board may forego, in its own behalf, beginning an investigation, it cannot cut off the statutory right of affected persons to apply to the Board by petition for an investigation. Of course, to mandate such an investigation, the petition must fulfill the requirement of 30 V.S.A. § 226 of being filed at least six days before the date on which the new or changed rate is to become effective. Certain options, *In re: New England Tel. & Tel. Co.*, 131 Vt. 310, 305 A.2d 598 (1973), are available to the Board with respect to such proceedings and enforcement of the associated rates, and other separate and distinct powers and duties relating to rates reside in the Board from other statutes, but they do not divest affected parties of this right of petition. Thus, critical to the testing of General Order No. 55 is the issue of whether or not a variable power purchase and fuel adjustment clause can be viewed as a "rate" or does its operation, each time its value varies, represent a "change"?

This issue has not previously been squarely raised before this Court. See *Petition of Green Mountain Power*, 131 Vt. 284, 305 A.2d 571 (1973); *Jones* v. *Montpelier and Barre Light and Power Co.*, 96 Vt. 397, 120 Atl. 103 (1923). It is to be noted that in the *Jones* case, in the proceedings before the then Public Service Commission, an adjustable "fuel charge" was disallowed as unreasonable, unfair and not a proper method of increasing rates. *Jones* v. *Montpelier and Barre Light and Power Co.*, 1921D P.U.R. 145. The circumstances were different, in that the determination to operate its steam generators as a supplement or alternative to the hydroelectric generators was entirely the company's as an internal management decision. Thus there would exist in the utility some control over its own rates, if allowed, by the company's election with respect to the use of its own facilities. This is different than the circumstances relating to the present proposals of adjustment clauses. Nevertheless, the Commission rested part of its decision on a requirement and obligation of certainty in rates of public service corporations on file and in force at any particular time.

██ This Court finds in the provisions of 30 V.S.A. §§ 225, 226, and 227 an intention inconsistent with a rate schedule subject to indefinite and irregular variation without the advance notice called for in 30 V.S.A. § 225. Without legislation excusing the Board from carrying out these requirements, any variable clause cannot be treated as a fixed part of a rate schedule.

 The worthy motivation of the Board to save expense to rate payers and relieve the undue burden of frequent rate hearings is not enough to sustain a deviation from statutory requirements. This is, indeed, acknowledged by the Board. Certainly the mere fact that the utility itself has no control over certain of its costs does not, under our law, justify its exemption from regular rate procedures. Other states have used this approach, even applying it to such things as taxes. *State* v. *Burton*, 334 S.W.2d 75 (Mo. 1960). The regulatory duty is more compelling than mere recovery of costs. It must operate to implement sound management, not only for the benefit of the utility customer, but for the continuance of the enterprise. *Petition of New England Tel. & Tel.*, 120 Vt. 181, 136 A.2d 357 (1957). The Board's concern for such rate litigation as may be wasteful and destructive is not misplaced, for the utility customers are ill-served by the burden of unnecessary diversion of their utility charges in this direction. But the remedy must be found within the statutory authority of the Board.

The setting of rates is entirely an exercise in prediction. The schedule is an estimate as to what rates will produce a rate of return fair to the investors or owners of the utility while providing utility customers with service at the lowest cost consistent with good management. In times of stable costs, a schedule may remain satisfactory for a considerable period. Even in times of rapid economic change, not all factors involved in establishing fair rates of return may require constant review, if there is nothing about them that has been affected.

As was pointed out in *In re: New England Tel. & Tel. Co.*, 131 Vt. 310, 305 A.2d 598 (1973), the Board must make the best use it can of the rate-setting options of 30 V.S.A. §§ 225,

226 and 227 to achieve the result best protecting the rights of the utility and its customers.

With respect to General Order No. 55, its shortcoming can be overcome by requiring changes under the purchase power and fuel adjustment clause to henceforth be filed as rate changes under 30 V.S.A. § 225. This adds to the burdens of the Public Service Board, and it may be that, on that account, the incidence of such changes may be better handled at a less frequent interval than monthly. Even so, in such circumstances of frequent change, to require on every occasion complete reexamination of the rate structure of a utility would be wasteful and redundant. Absent a demonstration of significant change, it would seem that the previously filed evidence on other aspects, as evaluated by previous Board decisions, should stand. This is an area where the Public Service Board's special competence should be allowed to operate. *In re: New England Tel. & Tel. Co.*, 131 Vt. 470, 472, 307 A.2d 783 (1973).

## On Motion for Reargument

**Barney, C.J.** There having been a motion for reargument filed in this case, the matter came on for hearing. After argument and upon reviewing the briefs submitted, it was the determination of this Court that no grounds for reargument were established. Since it did appear that certain of the parties were in disagreement as to the meaning of the Entry Order originally filed, the Entry Orders in this case and in the case of *Moore* v. *Gilbert*, 132 Vt. 365, 321 A.2d 13 (1974), have been amended. These amendments do not change the result in either case.

*Motion for reargument denied.*

*The cause is remanded to the Public Service Board in order that the Board may amend or revise General Order No. 55 or take such other action in that regard as it may be advised, consistent with the views expressed in this opinion. Any rate changes claimed to have been authorized under General Order No. 55 by any utility will be effective only insofar as they qualify as valid rates after review by the Public Service Board for compliance with 30 V.S.A. §§ 208, 209, 218, 219, 225, 226 and 227, as they may be applicable. This entry and*

*mandate shall issue forthwith, to be certified to the Public Service Board.*